IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

DEVIN B.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:21-cv-01846-HL

**OPINION AND ORDER**

_____

HALLMAN, United States Magistrate Judge:

      Plaintiff Devin B. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Social Security Income ("SSI") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Commissioner's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." This Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the [Commissioner's]." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (internal quotation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the [Commissioner's] decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotations omitted).

**BACKGROUND**

**I.     Plaintiff's Application**

Plaintiff alleges disability based on Crohn's disease, anxiety, depression, reduced stamina, chronic abdominal and rectal pain, insomnia, low food absorption, reoccurring rectal

infections, slow healing, and obsessive-compulsive disorder. Tr. 71.[2] He has a high school education, some community college classes, and no past relevant work. Tr. 40, 65.

Plaintiff applied for SSI on September 17, 2018, alleging an onset date of July 30, 2013. Tr. 71. At the time of his alleged onset date, he was 18 years old, and was 23 years old at the time of application. Tr. 70. His application was initially denied on May 6, 2019, and again on reconsideration on December 19, 2019. Tr. 103, 109. Plaintiff subsequently requested a hearing, which was held on February 17, 2021, before Administrative Law Judge ("ALJ") Steven A. De Monbreum. Tr. 31. Plaintiff appeared telephonically, represented by counsel; a vocation expert ("VE"), Francene Geers, also testified. Tr. 33, 36. On February 22, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 15-30.

Plaintiff requested Appeals Counsel review, and on October 20, 2021, the Appeals Council denied the review. Tr. 5. Plaintiff then sought review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 6).

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not meet step two, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since September 17, 2018, the date of his application. Tr. 20.

At step two, the ALJ determined that plaintiff has the following severe impairment: Chron's disease. Tr. 20. The ALJ noted that anxiety and depression were cited in his past medical histories, "but there was no exploration of symptoms or actual diagnosis." Tr. 21. Therefore, the ALJ determined such mental impairments were non-medically determinable. *Id.*

At step three, the ALJ determined that plaintiff's impairment did not meet or medically equal the severity of a listed impairment. *Id.* The ALJ then found that plaintiff had the RFC to perform light work, "except with no climbing of ladders, ropes, and scaffolds or crawling and no exposure to vibrations or hazards such as dangerous machinery and unprotected heights." *Id.* The ALJ added that plaintiff "needs a worksite with an accessible bathroom." *Id.*

At step four, the ALJ found that plaintiff had no past relevant work. Tr. 24.

At step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a marker, router, and routing clerk. Tr. 25. Accordingly, the ALJ concluded that plaintiff is not disabled. Tr. 26.

## DISCUSSION

Plaintiff alleges two errors.  First, that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, to discount plaintiff's subjective symptom testimony. Second, that the ALJ failed to identify a legally sufficient basis supported by substantial

evidence to reject the opinions of the Social Security Administration's (the "Agency") reviewing doctors and, therefore, the opinions should be fully credited as true.

For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is affirmed.

## I.    Symptom Testimony

Plaintiff argues that the ALJ improperly discredited his subjective symptom testimony; specifically, his testimony that every two to three weeks, the effects from his Crohn's disease necessitates that plaintiff be in bed most of the day, except for extended time on the toilet.

### A.    *Legal Standard*

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation omitted). Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

PAGE 6 – OPINION AND ORDER

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

B.    *Plaintiff's Testimony*

Plaintiff testified that the symptoms from his Crohn's disease include fatigue, either diarrhea or constipation, with "a lot of abdominal cramps that sometimes have spiking pains" that make it difficult for him to stand up straight and that, sometimes, he must crawl because of the severity of the pain. Tr. 49, 51. Plaintiff testified that he would only go to the emergency room when he the pain has lasted "a day or two" and was so severe he had to crawl. Tr. 51.

He also testified that when his symptoms flare up, he will be in the bathroom in the morning from 60-90 minutes. Tr. 56. He explained that he would then "try to get to a point where I could maybe try to leave the toilet. But then, usually, I would try to get up and move around a bit, and that would kind of almost have some stuff start moving around again." *Id.* And then he would be in the bathroom for another hour. *Id.*

Plaintiff testified that these symptoms occur every two to three weeks. Tr. 49. When his attorney asked why plaintiff told his doctor on July 16, 2020, that he was doing okay when he was in so much pain he had to crawl, plaintiff explained that his doctor "already has documented" those symptoms before, and that "I would tell him that I was doing okay, because I haven't gone to the emergency room within those past couple of weeks. I was just dealing with

my day-to-day Crohn's problems. So I just didn't think it was something I should have noted." Tr. 53.

When asked if the iron infusions helped with his energy levels, plaintiff testified that he "didn't actually really notice too much of a difference, honestly, from not taking the iron and taking the iron." Tr. 63. Plaintiff testified that while on Stelara, his most recently prescribed infusion treatment, he had "better control," and that his "flare ups" would occur every two to three weeks, instead of every other week. Tr. 57.

C.    *The Medical Record*

In April 2017, plaintiff's doctor reported that plaintiff had an initially good response to Remicade, an infusion, but then it stopped working. Tr. 285. His doctor switched him to Humira and although plaintiff "never had as good as a response that he did to Remicade" that with weekly doses, "he tends to do pretty well." Tr. 285. In April 2017, plaintiff reported that he "has been doing fairly well over the last 6 months, although he is, as always, fairly vague about his symptoms." Tr. 287.

In April 2018, plaintiff had a rectal abscess drained. Tr. 293. In his post-surgery follow up, plaintiff reported that his symptoms "of pressure and pain are somewhat improved" and that the "symptoms don't seem to last as long as before surgery." Tr. 355. In May 2018, plaintiff was admitted to the emergency department for three days due to abdominal pain. Tr. 290, 299. Plaintiff's CT scans and MRIs were "consistent with Crohn's flare." Tr. 299.

Shortly thereafter in June 2018, plaintiff began seeing Dr. Timothy Gebhart at Oregon Health and Sciences University ("OHSU"). Tr. 398. After meeting with plaintiff and reviewing his records, Dr. Gebhart switched plaintiff from Humira to Stelara, and started iron infusions and various prescriptions of vitamins to help with plaintiff's fatigue. Tr. 397, 393. In September

2018, in a phone call with Dr. Gebhart, plaintiff reported that he had "started seeing some GI benefits over the past 2-3 weeks" with Stelara. Tr. 393. In October, plaintiff reported that he was "doing a lot better since he was last seen. He continues to have some stomach cramps, but they are improved with less frequency and shorter duration." Tr. 471. Plaintiff also reported that his fatigue was better, "but still has trouble making it through the day." Tr. 471.

His next appointment with Dr. Gebhart was in January 2019, and again plaintiff reported that he was seeing "some interval benefit from Stelara" even though the infusion was delayed due to pharmacy and insurance issues. Tr. 506. Regarding his fatigue, plaintiff said he "has more energy than when we last met" although his "sleep schedule is all over the place," but plaintiff attributed that to not working and living with people who worked night shift schedules. Tr. 506.

Plaintiff's next update to Dr. Gebhart's office was in November 2019.[4] Tr. 528. Plaintiff was late with his Stelara infusion due to issues with his pharmacy and had "been experiencing some symptoms." Tr. 528. Plaintiff then had a colonoscopy in December 2019, and at his follow up appointment with Dr. Gebhart in January after being a week or two late with each Stelara infusion due to pharmacy issues, plaintiff reported he was "not doing as well as his last clinic visit" and that he was experiencing "intermittent" abdominal pain. Tr. 558. In May of 2020, plaintiff was admitted to the emergency department due to abdominal pain. Tr. 592. His CT scan was "underwhelming in terms of any acute findings" and there was no evidence of an obstruction. Tr. 601. After receiving his Stelara infusion on June 10, 2020, in his last medical record, plaintiff reported to Dr. Gebhart on June 16th that he had "[m]inimal abdominal pain

---

[4] In March 2019, plaintiff was admitted to the emergency department for chest pains and possible irregular heartbeat. Tr. 528. Plaintiff agreed during the hearing that this visit was unrelated to his Crohn's disease. Tr. 51

lately" and that his energy level was "[o]k" though he "still [has] trouble with staying on consistent sleep schedule." Tr. 536.

As the ALJ noted, due to insurance and pharmacy issues, plaintiff had a difficult time being consistent with his Stelara infusions. Tr. 393, 527-28. But as Dr. Gebhart's medical records indicate, when plaintiff was able to receive the Stelara infusion on time, his symptoms improved. *See, e.g.*, tr. 385 ("He reports that he is doing a lot better since he was last seen. He continues to have some stomach cramps, but they are improved with less frequency and shorter duration."); 462 ("He's continued to see some interval benefit from Stelara[.]"); 536 (six days after a Stelara infusion, reported "minimal abdominal pain lately").

The evidence in the medical record regarding plaintiff's bowel movements and bathroom use was sparse. In October 2016, when plaintiff was suffering from a rectal abscess, he reported that he had "[n]o changes with bowel movements." Tr. 273. Next, in October of 2018, plaintiff complained of recent changes in bowel habits, but no other details were provided. Tr. 359. He also complained of changes in bowel habits on June 13, 2018, but again no further explanation was documented. Tr. 348. Then on June 27, 2018, plaintiff reported that his bowel habits were "1/day, some days none." Tr. 394. On January 18, 2019, plaintiff made the same report of "1/day." Tr. 462. In June 2018, he reported that there had been "[n]o change in bowel or bladder habits." Tr. 591. Finally, in January and June 2020, plaintiff reported that his bowel habits were "several a day." Tr. 558, 536.

D.    *The ALJ's Rejection of Symptom Testimony*

After summarizing plaintiff's hearing testimony, the ALJ determined that his medically determinable impairments could reasonably be expected to produce some degree of the alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. Specifically, the ALJ found that plaintiff's testimony that he did not respond positively to the Stelara or iron infusions was inconsistent with his contemporaneous statements to his treating doctors that the treatment was helping. Tr. 23-24.[5]

Here, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's testimony that his treatment was ineffective. An ALJ may reject symptom testimony that is inconsistent with the medical evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Inconsistences can arise when a plaintiff's statements about symptoms are contradicted by a doctor's report of improvement with medication. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Plaintiff consistently reported to his doctors that the Stelara and iron infusions—when timely received—helped with his symptoms and fatigue, which directly contradicts his testimony that he did not see improvement from either treatment. Moreover, a medical history of going to the bathroom none or once per day and then several times a day is inconsistent with plaintiff's testimony of being in the bathroom two to three hours a day, every two to three weeks. *See Carmickle v. Comm'r of Soc. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (finding an ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the record); *see also Molina v. Asture*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("We have long held that, in assessing a claimant's credibility, the ALJ may property rely on unexplained or inadequately explained failure to seek treatment or to follow a

---

[5] Plaintiff also argues that the ALJ discredited his hearing testimony based on two other inconsistencies in the record. First, that plaintiff reported to a doctor that he lost 100 pounds when he instead lost 35. Tr. 23. Second, that plaintiff testified that he believed he went to the emergency room three times in 2020, when he had, based on the medical records, only been once. Tr. 23. The Court agrees that the ALJ noted these discrepancies but disagrees with plaintiff's conclusion that these discrepancies led the ALJ to discredit plaintiff's symptom testimony.

prescribed course of treatment."). Accordingly, the ALJ did not err in discrediting plaintiff's subjective symptom testimony.

## II.    Agency's Reviewing Doctors

Plaintiff also assigns error to the ALJ's supposed rejection of the Agency's reviewing doctor's opinions. Under the revised regulations, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b)(2). At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Kevin R. H. v. Saul*, No. 6:20-cv-00215, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). An ALJ is "not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical." *Id.* (*citing* 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3)). An ALJ's decision to discredit a medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

The Agency's reviewing doctor, Dr. Thomas W. Davenport examined plaintiff's medical records and concluded that plaintiff could perform light work but "should have access to bathroom as needed." Tr. 79. Seven months later, in December 2019, on reconsideration, Dr. Susan H. Johnson agreed with Dr. Davenport's conclusion and added under "RFC – Additional Explanation" that plaintiff "will need freq. access to toilets." Tr. 92.

The ALJ found the Agency's non-examining medical "opinions persuasive," and reported in his written decision that the doctors concluded that plaintiff "could perform light exertion work with avoidance of concentrated exposure to hazards and 'access to bathroom as needed.'" Tr. 24.  The ALJ did not quote Dr. Johnson's statement that plaintiff required "freq. access to

toilets." Relying on these medical opinions and the record as a whole, the ALJ determined that the plaintiff had an RFC to perform light work "except with no climbing of ladders, ropes, and scaffolds or crawling and no exposure to vibrations or hazards such as dangerous machinery and unprotected heights," with the addition that plaintiff "needs a worksite with an accessible bathroom." Tr. 21.

Plaintiff argues that by quoting Dr. Davenport's opinion that plaintiff would need "access to bathroom as needed" and not quoting Dr. Johnson's statement that he would need "freq. access to toilets," and then using the phrase "accessible bathroom" in the RFC, that the ALJ improperly rejected Dr. Johnson's medical opinion. The Court disagrees.

By quoting only one part of the Agency's medical report and not another, the ALJ did not reject the Agency's medical opinions, improperly or otherwise. First, the ALJ stated that he found the medical "opinions persuasive" and incorporated the opinions into his decision and the RFC. Only quoting one part of the opinion and not another does not necessitate a rejection of part of a report. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding an ALJ is allowed to interpret and translate the medical opinions and such translation does not constitute a rejection of a medical opinion). Second, needing a bathroom "frequently" as opposed to "as needed" is a distinction without a difference. By stating that the plaintiff requires access to a bathroom "as needed" necessarily implies that if plaintiff needs the bathroom frequently, then that will be how often he needs access to the bathroom. For these reasons, the Court rejects plaintiff's argument that the ALJ rejected Dr. Johnson's opinion.

In a footnote and his reply brief, plaintiff appears to take issue with the ALJ's failure to include either the phrase "as needed" or "frequent" access to a bathroom in his RFC. Plaintiff's Br. 6, n.4; Plaintiff's Rep. Br. 4. Assuming that plaintiff is arguing the RFC was in error, the

Court rejects that argument. The ALJ was not required to use the doctor's exact wording when crafting the RFC. *See Davis v. Astrue*, No. 1:10-cv-01452-CL, 2012 WL 4005553, *9 (D. Or. June 12), *adopted by* 2012 WL 3614310 (D. Or. Aug. 21, 2012) ("it is the responsibility of the ALJ, not the claimant's physician, to determine [the RFC] and the ALJ's findings of RFC need not correspond precisely to any physician's findings") (citations and internal quotations omitted); *see also Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (an ALJ may incorporate a medical opinion by assessing RFC limitations consistent with, but not identical to, limitations assessed by the doctor).

The ALJ did not reject, improperly or otherwise, the Agency's medical opinion. There is no basis for this Court to disturb the ALJ's decision.

## CONCLUSION

The Court affirms the Commissioner's decision.

IT IS SO ORDERED.

DATED this 25th Day of April, 2023.

_____
ANDREW HALLMAN
United States Magistrate Judge